# APPENDIX 1

**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION**

|  |  |
|---|---|
| RAVGEN, INC.,<br><br>                 Plaintiff,<br><br>   vs.<br><br>LABORATORY CORPORATION OF<br>AMERICA HOLDINGS,<br><br>                 Defendant. | Civil Action No. 6:20-CV-00969-ADA<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT LABORATORY CORPORATION OF AMERICA HOLDINGS'
OPPOSED MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)**

## **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................1

II.     BACKGROUND ...................................................................................................2

        A.      The Parties ................................................................................................2

        B.      The Accused Services ...............................................................................2

        C.      The Witnesses ...........................................................................................3

III.    LEGAL STANDARD............................................................................................5

IV.     ARGUMENT ........................................................................................................6

        A.      This Action Could Have Been Brought in the Southern District of California .......6

        B.      The Southern District of California is Clearly More Convenient...........................7

                1.      Private Factor 1 Heavily Favors Transfer ................................... 7

                2.      Private Factor 2 Heavily Favors Transfer ................................... 9

                3.      Private Factor 3 Heavily Favors Transfer ................................. 10

                4.      Private Factor 4 is Neutral ......................................................... 11

                5.      Public Factor 1 Slightly Favors Transfer ................................... 13

                6.      Public Factor 2 Heavily Favors Transfer ................................... 13

                7.      Public Factors 3 and 4 are Neutral ............................................ 15

V.      CONCLUSION....................................................................................................15

## TABLE OF AUTHORITIES

**CASES**

*10Tales, Inc. v. TikTok Inc.*,
No. 6:20-CV-00810-ADA, 2021 WL 2043978 (W.D. Tex. May 21, 2021) ................9, 10

*Action Indus. v. United States Fid. & Guar. Co.*,
358 F.3d 337 (5th Cir. 2004) ...........................................................................................6

*Affinity Labs of Tex., LLC v. BlackBerry Ltd.*,
No. 6:13-CV-362, 2014 U.S. Dist. LEXIS 185024 (W.D. Tex. June 10,
2014) ...............................................................................................................................8

*Data Scape, Ltd. v. Dell Techs., Inc.*,
No. 6:19-CV-00129-ADA, 2019 WL 4254069 (W.D. Tex. June 7, 2019) .....................14

*Fintiv, Inc. v. Apple Inc.*,
No. 6:18-CV-00372-ADA, 2019 WL 4743678 (W.D. Tex. Sept. 13, 2019) ....................7

*In re Apple, Inc.*,
979 F.3d 1332 (Fed. Cir. 2020) ("*Apple I*") .....................................................................8

*In re Apple, Inc.*,
No. 21-181, 2021 U.S. App. LEXIS 33788 (Fed. Cir. Nov. 15, 2021)
("*Apple II*") ............................................................................................... passim

*In re Atlassian Grp., PLC*,
No. 21-177, 2021 U.S. App. LEXIS 33790 (Fed. Cir. Nov. 15, 2021)
("*Atlassian*") ............................................................................................... passim

*In re Genentech*,
566 F.3d 1338 (Fed. Cir. 2009)......................................................................................10

*In re Google LLC*,
No. 21-178, 2021 U.S. App. LEXIS 33789 (Fed. Cir. Nov. 15, 2021)
("*Google*")...................................................................................................8, 11, 12, 14

*In re Hulu, LLC*,
No. 2021-142, 2021 U.S. App. LEXIS 22723 (Fed. Cir. Aug. 2, 2021) .........................13

*In re Juniper Networks, Inc.*,
14 F.4th 1313 (Fed. Cir. 2021) ..................................................................................6, 13

*In re Micron Tech., Inc.*,
875 F.3d 1091 (Fed. Cir. 2017).......................................................................................12

*In re Quest Diagnostics Inc.*,
    No. 21-193, 2021 U.S. App. LEXIS 33405 (Fed. Cir. Nov. 10, 2021)
    ("*Quest*") ................................................................................................................ passim

*In re Radmax, Ltd.*,
    720 F.3d 285 (5th Cir. 2013) ......................................................................................7, 8

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ............................................................................6, 7, 9, 15

*Medical Solutions, Inc. v. C Change Surgical LLC*,
    541 F.3d 1136 (Fed. Cir. 2008)......................................................................................7

*Parus Holdings Inc. v. LG Elecs. Inc.*,
    No. 6:19-CV-00432-ADA, 2020 U.S. Dist. LEXIS 150926 (W.D. Tex.
    Aug. 6, 2020) ...............................................................................................................11

*Ravgen, Inc. v. Natera, Inc.*,
    No. 1:20-cv-00692-UA, Dkt. 183 (W.D. Tex. Nov. 12, 2021)..................................1, 12

*Ravgen, Inc. v. PerkinElmer Inc.*,
    No. 1:20-cv-00822-ADA, Dkt. 83 (W.D. Tex. Sept. 30, 2021) ...................................1, 12

*Ravgen, Inc. v. Quest Diagnostics, Inc.*,
    No. 6:20-cv-00972-ADA (W.D. Tex.).............................................................................12

*Super Interconnect Techs. v. Google LLC*,
    No. 6:21-cv-00259-ADA, Dkt. 49, slip op. (W.D. Tex. Nov. 8, 2021) ......................10, 11

**STATUTES**

28 U.S.C. § 1338(a) .................................................................................................................6

28 U.S.C. § 1404(a) .............................................................................................................6, 12

## <u>TABLE OF EXHIBITS</u>

| Exhibit No. | Description |
|:---:|:---|
| A | Declaration of Taylor Jensen, Ph.D. |
| B | Declaration of Mark Li |
| C | Ravgen, Contact Us, https://ravgen.com/contact-us/ (accessed Nov. 18, 2021) |
| D | Excerpt (pp. 13-15, 55-56) from Defendant Labcorp's Objections and Responses to Plaintiff's First Set of Interrogatories to Defendant (Nos. 1-25) dated November 8, 2021 |
| E | Lexis Accuprint Report – Ravinder S. Dhallan |
| F | Plaintiff's Initial Disclosures Pursuant to Fed. R. Civ. P. 26 dated September 21, 2021 |
| G | Lexis Accuprint Report – John R. Varney |
| H | Lexis Accuprint Report – Michael J. Cronin |
| I | Excerpt (pp. 14-21) from Plaintiff Ravgen, Inc.'s Responses to Defendant's First Set of Interrogatories (Nos. 1-13)<br><br>(*Filed Under Seal*) |
| J | Lexis Accuprint Report – Subhendra Mattagajasingh |
| K | Lexis Accuprint Report – Wei-Chun Au |
| L | Defendant Labcorp's Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1) dated September 21, 2021 |
| M | Lexis Accuprint Report – Harry F. Hixson |
| N | LinkedIn, Bill Welch, https://www.linkedin.com/in/welchwj/ (accessed Nov. 22, 2021) |
| O | Lex Machina, S.D. Cal. Time to Trial Statistics (Patent Cases), https://law.lexmachina.com/court/casd/cases?pending-from=2011-01-01&filters=true&view=analytics&tab=timing&cols=475 (accessed Nov. 22, 2021) |

| Exhibit No. | Description |
|:---:|:---|
| P | Lex Machina, W.D. Tex. Time to Trial Statistics (Patent Cases), https://law.lexmachina.com/court/txwd/cases?pending-from=2011-01-01&filters=true&view=analytics&tab=timing&cols=475 (accessed Nov. 22, 2021) |
| Q | Lex Machina, S.D. Cal. Time to Trial Statistics (All Cases), https://law.lexmachina.com/court/casd/cases?pending-from=2011-01-01&filters=true&view=analytics&tab=timing&cols=475 (accessed Nov. 22, 2021) |
| R | Lex Machina, W.D. Tex. Time to Trial Statistics (All Cases), https://law.lexmachina.com/court/txwd/cases?pending-from=2011-01-01&filters=true&view=analytics&tab=timing&cols=475 (accessed Nov. 22, 2021) |
| S | Lex Machina, S.D. Cal. Open Cases by Judge, https://law.lexmachina.com/court/casd/judge/ (accessed Nov. 22, 2021) |
| T | Lex Machina, W.D. Tex. Open Cases by Judge, https://law.lexmachina.com/court/txwd/judge/ (accessed Nov. 22, 2021) |
| U | Lex Machina, S.D. Cal. Open Patent Cases, https://law.lexmachina.com/court/casd/cases?status=open&pending-from=2009-01-01&filters=true&tab=summary&view=analytics&cols=475&case_types-include=27&and_filter=case_types (accessed Nov. 22, 2021) |
| V | Lex Machina, W.D. Tex. Open Patent Cases, https://law.lexmachina.com/court/txwd/cases?pending-from=2009-01-01&filters=true&view=analytics&tab=summary&case_types-include=27&and_filter=case_types&status=open&cols=475 (accessed Nov. 22, 2021) |
| W | PR Newswire, Sequenom Announces Changes in Company Leadership, https://www.prnewswire.com/news-releases/sequenom-announces-changes-in-company-leadership-248657841.html (Mar. 5, 2014) |

## I.     INTRODUCTION

Defendant Laboratory Corporation of America Holdings ("Labcorp") respectfully moves to transfer this case from the Western District of Texas ("WDTX") to the Southern District of California ("SDCA").  Labcorp files this motion as a result of changed circumstances impacting this litigation which have made the SDCA a clearly more convenient forum for this case.  The changed circumstances include disposition of all other co-pending related cases in this Court by either early settlement or by transfer to other locales.  *See Ravgen, Inc. v. PerkinElmer Inc.*, No. 1:20-cv-00822-ADA, Dkt. 83 (W.D. Tex. Sept. 30, 2021) ("*PerkinElmer*") (dismissed); *In re Quest Diagnostics Inc.*, No. 21-193, 2021 U.S. App. LEXIS 33405 (Fed. Cir. Nov. 10, 2021) ("*Quest*") (ordering transfer to the Central District of California); *Ravgen, Inc. v. Natera, Inc.*, No. 1:20-cv-00692-UA, Dkt. 183 (W.D. Tex. Nov. 12, 2021) ("*Natera*") (transferred to another Judge).  This motion also is informed by the guidance reflected in recent Federal Circuit decisions, including *Quest*, as to the weight and specificity of the transfer factors.  SDCA is now a clearly a more convenient venue than WDTX for at least the following reasons.

**First**, the locus of the case is in SDCA, as there are key material connections between SDCA and the instant case.  For example:

- A number of knowledgeable Labcorp party witnesses and third-party witnesses reside in SDCA;

- SDCA is more convenient than WDTX for a key third-party witness outside of SDCA; and

- The only Labcorp-developed accused services (i.e., non-third-party services) that are still on the market were developed and validated by Labcorp in SDCA, and are only performed in SDCA.

***Second***, neither of the parties, nor any facts of the case, have any relevant connection to WDTX.  For example:

- Plaintiff Ravgen, Inc. ("Ravgen") is a Delaware corporation headquartered in Maryland, and has no offices, employees, or operations in WDTX;

- Labcorp is a Delaware corporation headquartered in North Carolina;

- None of relevant witnesses, either party or third-party, are in WDTX; and

- None of the accused services were developed or performed in WDTX.

In short, the locus of the instant case is in SDCA, and there are no meaningful or relevant connections between it and WDTX.  Thus, this case should be transferred to SDCA.

## II.      BACKGROUND

### A.      The Parties

Plaintiff "Ravgen is a Delaware corporation with its principal place of business [in] Columbia, Maryland[.]"  Dkt. 1 at ¶ 2.  Ravgen does not appear to sell any products, perform any services, have any employees, do any research or development, or otherwise do any business in WDTX.  *See id.* at ¶¶ 2, 16-26; Ex. C (Ravgen Website) (listing only an address in Columbia, Maryland).

Labcorp is a "Delaware corporation with its principal place of business [in] . . . Burlington, North Carolina[.]"  Dkt. 1 at ¶ 3.  Labcorp develops, uses, and commercializes a variety of diagnostic tests, with numerous diagnostic testing facilities, laboratories, and office space all around the United States.  Ex. A (Jensen Decl.) at ¶ 2.

### B.      The Accused Services

Ravgen's allegations of infringement center on three categories of accused services: (1) the MaterniT21 PLUS test and the MaterniT Genome test (the "Sequenom Tests"); (2) the informaSeq Non-invasive Prenatal Test (the "informaSeq Test"); and (3) a third-party test, Resolution

Bioscience, Inc.'s ("ResBio") Resolution ctDx Lung Assay (the "ResBio Test") (collectively, the "Accused Services"). *See* Dkt. 1 at ¶ 4.

**(1) The Sequenom Tests:** The Sequenom Tests were developed and validated by Sequenom, Inc. ("Sequenom"), a wholly owned subsidiary of Labcorp. Ex. A (Jensen Decl.) at ¶¶ 3, 6; Ex. D at 56. Sequenom is a Delaware corporation with its primary place of business in San Diego, California. Ex. A (Jensen Decl.) at ¶ 3. The Sequenom Tests were developed and validated in San Diego. *Id.* at ¶ 6. All performance and analysis of the Sequenom Tests are conducted at Sequenom's laboratory in San Diego by Labcorp employees at that location. *Id.* Documents relating to research, development, design, validation, and operation of the Sequenom Tests are located in San Diego. *Id.*

**(2) The informaSeq Test:** The informaSeq Test was developed and validated by Labcorp in Durham, North Carolina. *Id.* at ¶ 8. Documents relating to research, development, design, validation, and operation of the informaSeq Test are located in Durham. *Id.* Labcorp discontinued the informaSeq Test in or around November 2019. *Id.* While it was offered, all performance and analysis of the informaSeq Test were done at Labcorp's laboratory in Durham by Labcorp employees at that location. *Id.*

**(3) The ResBio Test:** All documents relating to and personnel knowledgeable about research, development, design, validation, and operation of the ResBio Test are located in Kirkland, Washington. Ex. B (Li Decl.) at ¶¶ 6-7. No ResBio personnel are located in WDTX. *See id.* at ¶ 5. Labcorp only markets and bills for the ResBio Test, and assists with specimen collection. Ex. A (Jensen Decl.) at ¶ 10.

### C.     The Witnesses

No likely Ravgen witnesses appear to be located in WDTX. The named inventor of the Asserted Patents, Dr. Ravinder S. Dhallan, resides in Maryland. *See* Ex. E at 3. None of the

Ravgen-affiliated individuals or entities listed on Ravgen's Initial Disclosures as likely to have discoverable information appear to be located in WDTX.  *See* Ex. F at 2-3 (listing John R. Varney; Michael J. Cronin; Morrison & Foerster LLP (San Francisco); and Husch Blackwell LLP (Kansas City)); Ex. G at 3 (Varney in Maryland); Ex. H at 3 (Cronin in Wisconsin).  Nor are any of the additional individuals identified by Ravgen in its interrogatory responses to date.  *See* Ex. I at 20 (listing Subhendra Mattagajasingh and Wei-Chun Au); Ex. J at 3 (Mattagajasingh in Pennsylvania); Ex. K at 3 (Au in Maryland).

On the other hand, Labcorp has key party witnesses located in SDCA, but no witnesses in WDTX:

**Taylor Jensen, Ph.D.**  Dr. Jensen is Labcorp's Senior Director of Oncology Research & Development.  Ex. A (Jensen Decl.) at ¶ 1; Ex. L at 4.  Dr. Jensen was involved in the research, development, operation, and design of the Sequenom Tests, and also possesses knowledge about the informaSeq Test as well as Labcorp's arrangement with ResBio regarding the ResBio Test.  *Id.* at ¶¶ 6-10; *see also* Ex. D at 15.  Dr. Jensen currently divides his time between Sequenom's San Diego office and Labcorp's office in Durham.  Ex. A (Jensen Decl.) at ¶ 4.

**Michael Sapeta.**  Mr. Sapeta is Labcorp's Vice President of Operations, who has knowledge of the operation of the Sequenom Tests.  Ex. L at 5.  Like Dr. Jensen, Mr. Sapeta divides his time between Sequenom's San Diego office and Labcorp's office in Durham.  Ex. A (Jensen Decl.) at ¶ 7.

**Graham McLennan.**  Mr. McLennan is Labcorp's Senior Director of Clinical Operations.  Ex. D at 15.  He is knowledgeable about blood collection tubes tested and/or used for the Sequenom Tests.  *Id.*  Mr. McLennan works in San Diego.  Ex. A (Jensen Decl.) at ¶ 7.

**Vachras Angkachatchai.**  Ms. Angkachatchai is a Scientist at LabCorp.  Ex. D at 14.  She

is knowledgeable about blood collection tubes tested and/or used for the Sequenom Tests. *Id.* Ms. Angkachatchai works in San Diego. Ex. A (Jensen Decl.) at ¶ 7.

Further, there are key third-party witnesses residing in SDCA or for whom SDCA would be more convenient to travel to, relative to WDTX:

**Harry Hixson, Ph.D.** Dr. Hixson was Sequenom's CEO from 2009 to 2014. Ex. W at 1. Dr. Hixson was CEO when the first Sequenom Test launched on October 17, 2011. *See* Dkt. 1 at ¶ 42. Ravgen specifically identifies Dr. Hixson in its Complaint, referencing communications between Dr. Hixson and Dr. Dhallan (the inventor of the Asserted Patents) in an attempt to establish Labcorp's knowledge of the Asserted Patents. *See id.* at ¶ 95. Dr. Hixson resides in La Jolla, California, which is located within SDCA. Ex. M at 2.

**Bill Welch, Ph.D.** Dr. Welch was Sequenom's CEO from 2014 to 2015, President and COO from 2012 to 2014, and Senior VP (Diagnostics) from 2011 to 2012. *See* Ex. N. He was then-CEO when MaterniT Genome (one of the accused Sequenom Tests) launched on July 13, 2015. *See* Dkt. 1 at ¶ 43. Ravgen specifically identifies Dr. Welch in its Complaint, referencing communications between Dr. Welch and Dr. Dhallan (the inventor of the Asserted Patents) in an attempt to establish Labcorp's knowledge of the Asserted Patents. *See id.* at ¶ 96. Mr. Welch resides in San Diego, California, located within SDCA. Ex. N.

**ResBio.** ResBio is a third-party, based in Kirkland, Washington, which developed the accused ResBio Test, and also performs the ResBio Test. Ex. B (Li Decl.) at ¶¶ 5-7. It would be more convenient for ResBio witnesses to travel to San Diego, California as compared to Waco, Texas. *Id.* at ¶¶ 8-10.

## III. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to

any district or division to which all parties have consented." 28 U.S.C. § 1404(a).  Courts conduct

a two-step analysis when considering § 1404(a): (1) consider whether a civil action "might have

been brought" in the destination venue; and (2) weigh eight private and public factors to determine

whether the transfer promotes the convenience of the parties and witnesses.  *In re Volkswagen of*

*Am., Inc.*, 545 F.3d 304, 312, 315 (5th Cir. 2008).[1]  No single private or public factor is dispositive.

*See Action Indus. v. United States Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004).  Where

the action could have been brought in the transferee venue, and upon weighing the public and

private factors, the transferee venue is "clearly more convenient" than the transferor venue, "the

district court should grant the transfer." *Volkswagen*, 545 F.3d at 315.

## IV.     ARGUMENT

### A.     This Action Could Have Been Brought in the Southern District of California

Ravgen could have brought the instant action in SDCA.  Sequenom, a wholly owned

subsidiary of Labcorp, that developed and performs the Sequenom Tests, is located in San Diego.

Ex. A (Jensen Decl.) at ¶¶ 3, 6.  Labcorp also sells and offers to sell all of the Accused Services

still in the market today in SDCA.  *See id.* at ¶¶ 6-10.  Accordingly, SDCA has subject matter

jurisdiction over this action, as Ravgen's claims arise under the patent laws of the United States.

*See* 28 U.S.C. § 1338(a).  SDCA also has personal jurisdiction over Labcorp, as Labcorp has

sufficient minimum contacts by virtue of developing and/or selling the Accused Services in San

---

[1] "The private interest factors are: '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.'  The public interest factors are: '(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.'"  *Id.* at 315 (citation omitted).  Private factor 3 has also been described as "the relative convenience of the two forums for potential witnesses."  *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1316-17 (Fed. Cir. 2021).

Diego (which forms the basis of Ravgen's claims). *See Medical Solutions, Inc. v. C Change Surgical LLC*, 541 F.3d 1136, 1139-41 (Fed. Cir. 2008).

### B.   The Southern District of California is Clearly More Convenient

SDCA is clearly the more convenient venue because upon analysis of the eight private and public factors, **four (4)** heavily favor transfer, **one (1)** slightly favors transfer, and **three (3)** are neutral:

| | |
|---|---|
| **Private Factor 1:** The relative ease of access to sources of proof | Heavily favors transfer |
| **Private Factor 2:** Availability of compulsory process to secure the attendance of witnesses | Heavily favors transfer |
| **Private Factor 3:** Cost of attendance for willing witnesses | Heavily favors transfer |
| **Private Factor 4:** All other practical problems that make trial of a case easy, expeditious and inexpensive | Neutral |
| **Public Factor 1:** The administrative difficulties flowing from court congestion | Slightly favors transfer |
| **Public Factor 2:** Local interest in having localized interests decided at home | Heavily favors transfer |
| **Public Factor 3:** Familiarity of the forum with the law that will govern the case | Neutral |
| **Public Factor 4:** Avoidance of unnecessary problems of conflict of laws or in the application of foreign law | Neutral |

### 1.   Private Factor 1 Heavily Favors Transfer

The first private interest factor—relative ease of access to sources of proof—heavily favors transfer because there is a significant amount of highly relevant evidence in SDCA, and ***none*** in WDTX.  "In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-CV-00372-ADA, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 13, 2019) (citing *Volkswagen*, 545 F.3d at 316).  "[T]he question is *relative* ease of access, not *absolute* ease of access." *Quest*, 2021 U.S. App. LEXIS 33405 at *6 (quoting *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013))

(emphasis in original).  "While electronic storage makes documents more widely accessible, this factor remains relevant."  *Id.* (citing *Radmax*, 720 F.3d at 288).

Ravgen's claims of patent infringement concern the method by which the Sequenom, informaSeq, and ResBio Tests are performed.  *See* Dkt. 1 at ¶¶ 42-86.  "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *In re Apple, Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) ("*Apple I*"); *see also Affinity Labs of Tex., LLC v. BlackBerry Ltd.*, No. 6:13-CV-362, 2014 U.S. Dist. LEXIS 185024, at *19 (W.D. Tex. June 10, 2014) ("[I]nfringement suits 'often focus on the activities of the alleged infringer, its employees, and its documents,' the location of a product's development 'is often the critical and controlling consideration in adjudicating transfer of venue motions.'").  Documents regarding research, development, design, validation, and operation of the Sequenom Tests are located in SDCA, as are witnesses knowledgeable of these documents.  *See* Ex. A (Jensen Decl.) at ¶ 6; *In re Google LLC*, No. 21-178, 2021 U.S. App. LEXIS 33789, at *7 (Fed. Cir. Nov. 15, 2021) ("*Google*") ("The district court erred by analyzing only the location of servers where documents are stored, rather than also considering the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval.  This factor appears to slightly favor transfer.").  Moreover, documents regarding Labcorp's former service, the informaSeq Test, are in North Carolina (*see* Ex. A (Jensen Decl.) at ¶ 8) and documents regarding the third-party test, the ResBio Test, are in Washington (*see* Ex. B (Li Decl.) at ¶ 7).  That is, ***none*** of the relevant, material evidence regarding the Accused Services is in WDTX, and a significant part is in SDCA.  Nor is it likely that any of Ravgen's material evidence is located in WDTX, as it appears to have no relevant contacts at all with WDTX.  *See* §§ II.A, II.C, *supra*.  Indeed, in its

-8-

Initial Disclosures, Ravgen only identified Ravgen's facilities (where Maryland is the only known location) and outside counsel's office (New York) as location of documents in Ravgen's possession, custody, or control.  Ex. F at 7.  Clearly, significant evidence is easier accessed in SDCA than in WDTX.

### 2.    Private Factor 2 Heavily Favors Transfer

The second private interest factor—the availability of compulsory process to secure the attendance of witnesses—weighs strongly in favor of transfer because there are material third-party witnesses residing in SDCA, and ***none*** in WDTX.  Where "there are potential third-party witnesses subject to the subpoena powers of the [transferee venue] but not the Western District of Texas . . . the compulsory process factor weighs strongly in favor of transfer."  *In re Apple, Inc.*, No. 21-181, 2021 U.S. App. LEXIS 33788, at *8 (Fed. Cir. Nov. 15, 2021) ("*Apple II*"); *see also Volkswagen*, 545 F.3d at 316-17 ("the non-party witnesses located in the city where the collision occurred 'are outside the Eastern District's subpoena power . . . . Moreover, a proper venue that does enjoy absolute subpoena power for both depositions and trial . . . is available. . . . Thus, the district court erred in applying this factor because it also weighs in favor of transfer."); *10Tales, Inc. v. TikTok Inc.*, No. 6:20-CV-00810-ADA, 2021 WL 2043978, at *3 (W.D. Tex. May 21, 2021) ("This factor will weigh ***heavily*** in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue.") (emphasis added).  "The fact that the plaintiff here elected to file its suit outside of the venue where the third parties are located does not negate the benefit of transferring to a forum that has the ability to compel their testimony."  *Apple II*, 2021 U.S. App. LEXIS 33788 at *8.

Here, third-party witnesses, Drs. Hixson and Welch, are located in, and within the subpoena power of SDCA.  *See* Exs. M, N.  Drs. Hixon and Welch, as former CEOs of Sequenom, have knowledge about the Sequenom Tests, the only Labcorp-developed Accused Services offered

today.  *See* §§ II.B, II.C, *supra*.  More importantly, Ravgen identified Drs. Hixson and Welch in

its Complaint and Initial Disclosures as witnesses who communicated and/or met with Dr. Dhallan

at Ravgen, and who may have knowledge about the Asserted Patents.  Dkt. 1 at ¶¶ 95-96; Ex. F at

4.  In comparison, there appears to be *no* third-party witnesses in WDTX.  Thus, this factor

"weigh[s] heavily in favor of transfer [as] more third-party witnesses reside within the transferee

venue than reside in the transferor venue.'"  *Apple II*, 2021 U.S. App. LEXIS 33788 at *7.

### 3.        Private Factor 3 Heavily Favors Transfer

The third private interest factor—the cost of attendance for willing witnesses (or relative

convenience of the two forums for potential witnesses)—heavily favors transfer because there are

numerous relevant party and non-party witnesses located in SDCA, and *none* in WDTX.  "The

convenience of the witnesses is the single most important factor in the transfer analysis."  *Quest*,

2021 U.S. App. LEXIS 33405 at *4; *see also In re Genentech*, 566 F.3d 1338, 1343 (Fed. Cir.

2009) (same); *10Tales, Inc.*, 2021 WL 2043978 at *4 (same).  "[T]he fact that a witness is affiliated

with a party 'does not negate the inconvenience and cost to those individuals to travel a significant

distance to testify.'"  *In re Atlassian Grp., PLC*, No. 21-177, 2021 U.S. App. LEXIS 33790, at *9

(Fed. Cir. Nov. 15, 2021) ("*Atlassian*").  "[W]hen there are numerous witnesses in the transferee

venue and the only other witnesses are far outside the plaintiff's chosen forum, the witness-

convenience factor favors transfer."  *Quest*, 2021 U.S. App. LEXIS 33405 at *5; *see also Apple

II*, 2021 U.S. App. LEXIS 33788 at *9 ("Because Apple identified several potential party and non-

party witnesses residing in the Northern District of California, and no potential witnesses appear

to reside in the Western District of Texas, the witness convenience factor weighs strongly in favor

of transfer."); *Super Interconnect Techs. v. Google LLC*, No. 6:21-cv-00259-ADA, Dkt. 49, slip

op. at 8 (W.D. Tex. Nov. 8, 2021) ("SIT has failed to show that any witnesses reside in the WDTX.

Google has identified at least nine that reside in the NDCA.  Although there is no magic number

-10-

of how many witnesses must be in one district compared to the other, the evidence here points to the NDCA being more convenient for willing witnesses.").

As discussed, at least two material third-party witnesses—Drs. Hixson and Welch—are located in SDCA.  *See* § II.C *supra*.  Similarly, several of Labcorp's party witnesses—Dr. Jensen, Messrs. Sapeta and McLennan, and Ms. Angkachatchai—are also located in SDCA.  *See id.* Furthermore, for ResBio—a third-party whose product is accused of infringement in this case—it would be more convenient to travel to SDCA, as compared to WDTX.  *See* Ex. B (Li Decl.) at ¶¶ 8-10.  And most importantly, there are no witnesses identified in this case with any relevant information—Labcorp, Ravgen, or third-party—in WDTX.  *See* § II.C, *supra*.

### 4.    Private Factor 4 is Neutral

The fourth private interest factor—all other practical problems that make trial of a case easy, expeditious and inexpensive—is neutral because the case is still in the early stages of litigation, and there are no co-pending cases before the Court.

Where a "case is in its early stages . . . any increase in judicial economy from the Court's experience in these early stages of litigation is likely to be limited."  *Parus Holdings Inc. v. LG Elecs. Inc.*, No. 6:19-CV-00432-ADA, 2020 U.S. Dist. LEXIS 150926, at *22 (W.D. Tex. Aug. 6, 2020).  "Judicial economy arising from multiple lawsuits filed on the same day in the same venue may be relevant, but such co-pending suits are not to be over-weighed if they are also the subject of motions to transfer[.]"  *Google*, 2021 U.S. App. LEXIS 33789 at *8; *see also id.* at *7-8 ("[t]he district court erred in weighing the practical problems factor as neutral" where "as of the time the district court denied [the motion to transfer], all of the respondent's co-pending actions in the Western District of Texas—filed the same day as the Google action—were subject to a motion to transfer . . . . The district court has since transferred two of these cases . . . . This factor may not weigh heavily.[)"]; *see also Atlassian*, 2021 U.S. App. LEXIS 33790 at *10-11 (same).

Here, the case is still in its early stages.  The Court only recently issued its Claim Construction Order (Dkt. 62) last month, and the case is in fact discovery.  Thus, any resulting impact on judicial economy based is minimal.  Even if, *arguendo*, the Court deems otherwise, "a sufficiently sharp change of law sometimes is a ground for permitting a party to advance a position that it did not advance earlier in the proceeding when the law at the time was strongly enough against that position."  *In re Micron Tech., Inc.*, 875 F.3d 1091, 1097 (Fed. Cir. 2017).  Here, the Federal Circuit recently provided further guidance as to the weight and specificity of factors pertaining to motions to transfer pursuant to § 1404(a) from WDTX—in particular, private factors 1 (sources of proof), 2 (compulsory process), 3 (convenience of the witnesses), and 4 (practical problems), and public factors 1 (court congestions) and 2 (local interests)—upon which the instant motion relies.  *See, e.g.*, *Quest*, 2021 U.S. App. LEXIS 33405 (Nov. 10, 2021); *Google*, 2021 U.S. App. LEXIS 33789 (Nov. 15, 2021); *Apple II*, 2021 U.S. App. LEXIS 33788 (Nov. 15, 2021); *Atlassian*, 2021 U.S. App. LEXIS 33790 (Nov. 15, 2021).

In addition, there are ***no*** co-pending cases before this Court.  Ravgen originally filed three other cases asserting the same Asserted Patents before this Court: (1) *Natera*, No. 1:20-cv-00692-UA; (2) *PerkinElmer*, No. 1:20-cv-00822-ADA; and (3) *Ravgen, Inc. v. Quest Diagnostics, Inc.*, No. 6:20-cv-00972-ADA (W.D. Tex.).  Not only did these cases involve different defendants, but they also involved different accused services, witnesses, and sources of evidence.  *See Apple II*, 2021 U.S. App. LEXIS 33788  at *12 ("the district court overstated the concern about waste of judicial resources and risk of inconsistent results" where the co-pending litigation involved "different defendants and different accused products").  Moreover, the *Natera* case has been transferred to another Judge in WDTX (*Natera* at Dkt. 183); the *PerkinElmer* case has been dismissed (*PerkinElmer* at Dkt. 83); and the Federal Circuit ordered the *Quest* case to be

transferred (*Quest*, 2021 U.S. App. LEXIS 33405 at *9).

### 5.   Public Factor 1 Slightly Favors Transfer

The first public interest factor—the administrative difficulties flowing from court congestion—slightly favors transfer, as there is no appreciable difference between SDCA and WDTX in bringing patent cases to trial, but there are considerably fewer pending cases per judgeship in SDCA as compared to WDTX.   The Federal Circuit evaluates this factor by comparing "cases per judgeship and average time to trial of the two forums[.]"   *In re Hulu, LLC*, No. 2021-142, 2021 U.S. App. LEXIS 22723, at *15 (Fed. Cir. Aug. 2, 2021).   "[I]t is improper to assess the court congestion factor based on the fact that the Western District of Texas has employed an aggressive scheduling order for setting a trial date."   *In re Juniper,* 14 F.4th 1313, 1322 (Fed. Cir. 2021).

Over the past decade, the median time to trial for patent cases in SDCA was 708 days, as compared to 724 days in WDTX. Exs. O, P.   However, over the same time period, for all types of cases, the average time to trial in SDCA was 927 cases, versus 598 in WDTX. Exs. Q, R.   Thus, from this information alone, it appears this factor is neutral.   However, there are currently 99.6% fewer pending patent cases per judgeship in SDCA (San Diego), compared to WDTX (Waco).   In WDTX (Waco), there are 832 open patent cases, and one active judge; in SDCA (San Diego), there are 54 open patent cases, and 17 active judges, which translates into roughly 3.2 pending patent cases per judgeship. Exs.  S, T, U, V.   When all types of cases are considered, there are 156 open cases per judgeship in SDCA (San Diego), compared to 1,101 open cases per judgeship in WDTX (Waco).  Exs. S, T.   This suggests that this factor slightly favors transfer.

### 6.   Public Factor 2 Heavily Favors Transfer

The second public interest factor—the local interest in having localized interests decided at home—weighs heavily in favor of transfer.  For the only Labcorp-developed accused services

-13-

currently in the market (i.e., the Sequenom Tests), the center of gravity is in SDCA.  The material underlying events giving rise to this action occurred in, and the material relevant evidence and witnesses are in, San Diego.  On the other hand, there is no relevant factual connection to WDTX.

"[T]he local interest factor, like all § 1404 factors, is concerned with the *relative* interests between the transferee and transferor forums."  *Data Scape, Ltd. v. Dell Techs., Inc.*, No. 6:19-CV-00129-ADA, 2019 WL 4254069, at *3 (W.D. Tex. June 7, 2019) (emphasis in original).  "[W]hat is required is that there be 'significant connections between a particular venue and *the events that gave rise to a suit.*'"  *Apple II*, 2021 U.S. App. LEXIS 33788 at *15-16 (emphasis in original).  "[T]hat [accused infringer in a patent infringement case] researched, designed, and developed the accused functionalities in the [transferee venue] and that no underlying events giving rise to this suit occurred in the Western District of Texas . . . . is sufficient to give the transferee venue a greater localized interest in the dispute, which favors transfer."  *Google*, 2021 U.S. App. LEXIS 33789 at *6; *see also Atlassian*, 2021 U.S. App. LEXIS 33790 at *9-10 ("The district court acknowledged that at least one of the accused software products was substantially developed by engineers and managers who live in and work from the Northern District of California.  'That is sufficient to give the transferee venue a greater localized interest in the dispute, which favors transfer.'").

Here, the accused Sequenom Tests were developed, designed, and validated in SDCA, where they are performed by Labcorp employees who work in San Diego.  *See* § II.B *supra*.  And **none** of the Accused Services were ever developed, designed, or validated in WDTX.  *See id.*  Clearly, SDCA has a relatively greater interest in adjudicating this case than WDTX.  This fact alone is "sufficient to give the transferee venue a greater localized interest in the dispute, which favors transfer."  *Atlassian*, 2021 U.S. App. LEXIS 33790 at *10.

Any claim by Ravgen that WDTX possesses an interest in adjudicating the case, by virtue of the Accused Services being sold or offered for sale in WDTX, or Labcorp collecting samples to be tested for purposes of the Accused Services, is unavailing. *See, e.g.*, Dkt. 1 at ¶¶ 54-65, 71-77, 84-86. There are no relevant witnesses identified in this case located in WDTX, let alone anyone in WDTX with any knowledge of development, validation, or operation of the Accused Services. Indeed, binding precedent has "repeatedly rejected that a party's 'general presence in a particular district' can alone 'give that district a special interest in the case.'" *Apple II*, 2021 U.S. App. LEXIS 33788 at *14-15; *see also Volkswagen*, 545 F.3d at 318 ("[T]hat the citizens of Marshall have an interest in this product liability case because the product is available in Marshall, and that for this reason jury duty would be no burden—stretches logic in a manner that eviscerates the public interest that this factor attempts to capture. [This] rationale could apply virtually to any judicial district[.]"). Even if, *arguendo*, Labcorp's actions in WDTX spawned some interest in WDTX, they do not create the same "'significant connections between' the Western District of Texas and 'the events that gave rise to [this] suit'" as compared to SDCA, where the Sequenom Tests were developed and are performed. *Atlassian*, 2021 U.S. App. LEXIS 33790 at *10.

### 7.    Public Factors 3 and 4 are Neutral

The third and fourth public interest factors—the familiarity of the forum with the law that will govern the case, and the avoidance of unnecessary problems of conflict of laws or in the application of foreign law—are neutral as both forums have extensive experience and expertise applying patent law and there are no conflicts of law or applications of foreign law involved.

## V.    CONCLUSION

For the foregoing reasons, Labcorp respectfully requests that the Court grant its motion to transfer the instant case to the Southern District of California.

Dated:  November 23, 2021

By:   /s/ Olivia M. Kim
      _____

Aden M. Allen
Texas Bar No. 24064808
**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation
900 South Capital of Texas Highway
Las Cimas IV, Fifth Floor
Austin, TX 78746-5546
Telephone:  512-338-5400
Facsimile:  512-338-5499
aallen@wsgr.com

Edward G. Poplawski
Admitted *pro hac vice*
Olivia M. Kim
Admitted *pro hac vice*
Erik J. Carlson
Admitted *pro hac vice*
**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
Telephone:  (323) 210-2900
Facsimile:  (866) 974-7329
epoplawski@wsgr.com
okim@wsgr.com
ecarlson@wsgr.com

Matias Ferrario
Admitted *pro hac vice*
**KILPATRICK TOWNSEND & STOCKTON LLP**
1001 West Fourth Street
Winston-Salem, NC 27101-2400
Telephone:  (336) 607-7300
Facsimile:  (336) 734-2651
mferrario@kilpatricktownsend.com

Peter J. Chassman (SBN 00787233)
Admitted *pro hac vice*
Hallie H. Wimberly (SBN 24106587)
Admitted *pro hac vice*
**REED SMITH LLP**
811 Main Street, Suite 1700
Houston, TX 77002
Telephone: (713) 469-3800

Facsimile: (713) 469-3899
pchassman@reedsmith.com
hwimberly@reedsmith.com

*Attorneys for Defendant Laboratory*
*Corporation of America Holdings*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on November 23, 2021 all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/ECF system.

*/s/ Olivia M. Kim*
Olivia M. Kim
