IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **RAVGEN, INC.,**<br>*Plaintiff*<br><br>-v-<br><br>**LABORATORY CORPORATION<br>OF AMERICA HOLDINGS,**<br><br>*Defendant* | **Civil Action No. 6:20-cv-00969-ADA**<br><br>**JURY TRIAL DEMANDED** |

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW (ECF NO. 261)**

Before the Court is Defendant Laboratory Corporation of America Holdings ("Labcorp's") Renewed Motion for Judgment as a Matter of Law Pursuant to Fed. R. Civ. P. 50(b) (ECF No. 261). Plaintiff Ravgen, Inc. ("Ravgen") filed an opposition to the motion on November 16, 2022 (ECF No. 286) and Labcorp filed a reply on November 23, 2022 (ECF No. 286). After careful consideration of the motion, the parties' briefing, and the applicable law, the Court **DENIES** Labcorp's motion.

**I.   BACKGROUND**

Ravgen brought a patent infringement suit against Labcorp on October 16, 2018, alleging infringement of U.S. Patent No. 7,332,277 ("the '277 patent"), *inter alia*. *See* ECF No. 1. The '277 patent is directed to methods of detection of genetic disorders. *Id*. at 11. Ravgen alleged that Labcorp manufactures, provides, sells, offers for sale, imports, and/or distributes products and services directly infringing the '277 patent. *Id*. at 57, 66. This Court conducted a jury trial on September 19–23, 2022, resulting in a unanimous verdict that Labcorp infringed the '277 patent. ECF No. 222 at 3.

During the trial, the jury heard testimony from Ravgen's technical expert, Dr. Van Ness, Labcorp's technical expert, Dr. Spellman, Ravgen's damages expert, Mr. Meyer, Labcorp's damages expert, Dr. Prowse, and many fact witnesses. Labcorp's motion centers around the infringement opinions related to two claim limitations, the evidence supporting the jury's finding of willful infringement, and the comparability of agreements upon which Ravgen's damages expert's opinions relied. ECF No. 261 at 1.

## II.   LEGAL PRINCIPLES

A court may grant JMOL against a prevailing party only if a reasonable jury would not have a legally sufficient evidentiary basis to find for the non-moving party on that issue. Fed. R. Civ. P. 50(a)(1). In deciding a renewed JMOL motion, a "court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Taylor-Travis v. Jackson State Univ.*, 984 F.3d 1107, 1112 (5th Cir. 2021). The court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Id*. This is because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 874 (5th Cir. 2013).

Courts grant JMOL for the party bearing the burden of proof only in extreme cases: (1) when the party bearing the burden of proof has established its case by evidence that the jury would not be at liberty to disbelieve, and (2) the only reasonable conclusion is in its favor. *See Mentor H/S, Inc. v. Medical Device All., Inc.*, 244 F.3d 1365, 1375 (Fed. Cir. 2001). JMOL is inappropriate if the record evidence is such that reasonable and fair-minded people in the exercise

of impartial judgment might reach different conclusions. *See Laxton v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir. 2003).

A jury verdict must stand unless there is a lack of substantial evidence, in the light most favorable to the successful party, to support the verdict. *See Am. Home Assur. Co. v. United Space All., LLC*, 378 F.3d 482, 487 (5th Cir. 2004). Substantial evidence is more than a scintilla, but less than a preponderance. *See Nichols v. Reliance Standard Life Ins. Co.*, 924 F.3d 802, 808 (5th Cir. 2019). Thus, JMOL must be denied if a jury's verdict is supported by legally sufficient evidence that amounts to more than a mere scintilla. *See Laxton*, 333 F.3d at 585.

### III. ANALYSIS

#### A. Substantial Evidence Supports the Jury's Infringement Findings for the Asserted Patent

Under 35 U.S.C. § 271, to prove an infringing "use" of a method, the patent owner must demonstrate that the accused infringer performs or uses each and every step of a claimed method. *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc). The jury found that Labcorp's MaterniT 21 PLUS, MaterniT GENOME, and informaSeq tests ("accused Labcorp products") infringed the '277 Patent. Labcorp seeks JMOL on those findings.

##### 1. Substantial Evidence Supports the Jury's Finding that the Accused Labcorp Products Meet the "Determining the Sequence of a Locus of Interest" Limitation

Labcorp moves for judgment as a matter of law under Fed. R. Civ. P. 50(b) that the accused Labcorp products do not perform the step of "determining the sequence of a locus of interest." ECF No. 261 at 1–2. Labcorp argues that the accused Labcorp products "result[] in sequencing 10 million (out of billions of) random DNA fragments, not a pre-selected locus of interest." *Id*. at 3

(citing (PTX-0002 at 1162:25–1163:2; 1166:4–20). Labcorp argues that no reasonably jury could have found that the accused Labcorp products sequence a locus of interest because the accused Labcorp products use random sequencing. *Id*. Ravgen argues that the accused Labcorp products determine the sequence of the loci of interest even if they sequence more than just a locus of interest. ECF No. 278 at 2. Ravgen also argues that Labcorp's arguments rest on a post-trial request for claim construction. *Id*. at 3–4.

Neither party proposed a construction for "determining the sequence of a locus of interest." To the extent Labcorp argues for a new construction now, it has waived that argument by omission. *See, e.g.*, *VLSI Tech. LLC v. Intel Corp.,* No. 6:21-cv-057-ADA, 2022 WL 1477725, at *7 (W.D. Tex. May 10, 2022) ("Even if this Court accepts Intel's characterization of the claims, Intel cannot prevail because it ultimately proposes a new claim construction, which it waived by omission").

The jury heard competing testimony from Dr. Van Ness and Dr. Spellman regarding how the accused Labcorp products work. *See, e.g.*, Tr. 391:9-392:2. Dr. Van Ness testified that "through massively parallel sequencing," Labcorp "generat[es] fragments of DNA… which contains loci of interest" that are sequenced. *Id.* at 1161:17-1162:10. Dr. Spellman testified that Labcorp's MPSS "collects billions of molecules . . . and it sequences them more or less indiscriminately"—in "a random way." The jury was free to weigh the competing testimony of the experts and come to a conclusion. *See, e.g.*, *i4i Limited Partnership, Infrastructure for Information Inc. v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010) ("The jury was entitled to hear the expert testimony and decide for itself what to accept or reject."). The Court finds that Ravgen presented substantial evidence during trial that the "determining the sequence of a locus of interest" limitation was met by the accused Labcorp products. Therefore, the Court finds the jury's determination of

infringement is supported by substantial evidence and declines to grant JMOL of no infringement on this ground.

### 2. Substantial Evidence Supports the Jury's Finding that the Accused Labcorp Products Meet the "an Agent That Inhibits Lysis of Cells . . . said Cell Lysis Inhibitor is . . . Formaldehyde" Limitation

Labcorp argues that the accused Labcorp products do not infringe, literally or under the doctrine of equivalents, because Ravgen failed to prove that formaldehyde is the agent that inhibits cell lysis in the accused Labcorp products. ECF No. 261 at 5. Ravgen responds that citations to testimony and documents presented to the jury regarding the presence of formaldehyde in Streck Tubes to inhibit cell lysis. ECF No. 278 at 4–6.

The Court agrees with Ravgen that substantial evidence supported the jury's finding that the accused Labcorp products satisfy the "an agent that inhibits lysis of cells . . . said cell lysis inhibitor is . . . formaldehyde" limitation. *See, e.g.*, Tr. 417:6–418:4, 418:17–419:3, 422:7–23; 433:7–434:15, 506:7–25. Even if the Court accepts Labcorp's arguments that any free formaldehyde in the Streck Tubes is minuscule and that glycine quenches any free formaldehyde, Labcorp fails to prove that reasonable minds could only conclude that the accused Labcorp's arguments do not infringe. At best, Labcorp presents a legitimate factual dispute and critiques the logical inferences underlying the jury's conclusion. Yet JMOL is only proper when the jury would not have been at liberty to disbelieve the evidence presented. *See Mentor*, 244 F.3d at 1375. Pointing out legitimate factual disputes over which reasonable minds could differ fails to meet this bar. The jury relied on more than a scintilla of evidence when it weighed both parties' expert opinions, the testimony of fact witnesses, and the documentary evidence, and rendered its verdict.

Additionally, the Court finds that substantial evidence supports the jury's finding that the accused Labcorp products infringe the "an agent that inhibits lysis of cells . . . said cell lysis

inhibitor is . . . formaldehyde" limitation under the doctrine of equivalents. Labcorp argues that Ravgen's expert, Dr. Van Ness, improperly subsumed his literal infringement analysis into his doctrine of equivalents analysis and he improperly expanded the scope of claim 132 by suggesting that IDU and formaldehyde are equivalent because they both prevent cell lysis by cross-linking cell membranes. ECF No. 261 at 8–9. However, neither of Labcorp's arguments show that substantial evidence does not support the jury's finding. Dr. Van Ness may have incorporated earlier testimony into his doctrine of equivalents analysis, but he provided testimony regarding the equivalence of IDU and formaldehyde. *See, e.g.*, Tr. 443:13–444:2, 433:7–434:15. Additionally, Dr. Van Ness did not improperly expand the scope of claim 132. The jury heard evidence that formaldehyde is both a cell lysis inhibitor and a cross-linker. *See, e.g.*, Tr. 867:16–20, 1116:20–24. Because claim 132 expressly recites "formaldehyde," which is both a cell lysis inhibitor and a cross-linker, claim vitiation does not exclude a finding of infringement under the doctrine of equivalents based on an equivalent compound that is also both a cell lysis inhibitor and cross-linker. Therefore, the Court declines to grant JMOL of no infringement on this ground.

        **B.**        **Substantial Evidence Supports the Jury's Willful Infringement Finding**

Labcorp argues that no reasonably jury could have found willful infringement because Labcorp did not copy the asserted patent or Ravgen's method, Labcorp had a good faith belief in non-infringement and invalidity, Labcorp uses old technology, and Labcorp had no specific intent to infringe. ECF No. 261 at 10–15.

"[T]he concept of 'willfulness' requires a jury to find no more than deliberate or intentional infringement." *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021) (citing *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020).

Copying is not required to support a verdict of willful infringement. *See, e.g.*, *Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274, 1300 (Fed. Cir. 2023) ("[C]onsistent with the court's instructions, the jury could have predicated its finding of willful infringement on "deliberate or reckless disregard of plaintiff's patent rights," without necessarily finding that Valve copied Ironburg's patent claims."). The jury heard evidence regarding communications between Ravgen and Labcorp related to Ravgen's patents and intellectual property, dating back to 2006. Tr. 128:19–129:7, 130:25–132:14, 917:3–918:12, 918:17–22, 919:7–12. The jury also heard evidence that in 2011, Labcorp reviewed Ravgen's patents and consulted with an attorney. Tr. 927:2–20. The jury further heard evidence of Labcorp's launching products using Streck Tubes and Ravgen's claims of infringement. Tr. 143:23–144:10, 145:24–146:10, 230:8–25.

While Labcorp's witnesses testified that the accused Labcorp products use a different approach from what is claimed in Ravgen's patents, the jury was free to weigh the evidence and come to its own conclusion. *See, e.g.*, *i4i Limited Partnership,* 598 F.3d at 856 ("The jury was entitled to hear the expert testimony and decide for itself what to accept or reject."). Therefore, substantial evidence supports the jury's willful infringement finding that Labcorp's infringement was deliberate or intentional, and the Court declines to grant JMOL of no willful infringement.

### C. Substantial Evidence Supports the Jury's Damages Award

Labcorp asserts that the jury's damages award is not supported by substantial evidence because Ravgen's damages expert, Mr. Meyer, failed to apportion the value of the asserted patent. ECF No. 261 at 15–16. Labcorp takes issue with Mr. Meyer's analysis of the comparability of the Ravgen Agreements and the hypothetical license (*id*. at 16–18) and the comparability of the Sequenom Agreements (*id*. at 18–20).

7

As an initial matter, the Court notes that Labcorp already challenged Mr. Meyer's analysis of the comparability of the Ravgen and Sequenom Agreements in a *Daubert* motion. ECF No. 113; *see, e.g.*, *VLSI*, 2022 WL 1477725, at *11 ("But this Court has already considered and rejected these arguments in Intel's prior *Daubert* motions and its Rule 59 Motion. By asking this Court to render JMOL with no additional compelling reasons, Intel seeks to deploy the same reliability arguments and obtain different results."). To the extent Labcorp's arguments rest on an argument that the jury's award is based on unreliable expert testimony, the Court has already considered and rejected these arguments. ECF No. 229.

At trial, Mr. Meyer testified regarding his methodology and why he believed it was appropriate to use the royalty rate from the Ravgen Agreements for the hypothetical license and the adjustments he made to the rate. *See, e.g.*, Tr. 568:3–569:17, 584:10–587:2, 629:18–630:9. Additionally, regarding the Sequenom Agreements, Dr. Van Ness testified regarding the technical comparability of the licenses (Tr. 456:22–457:4, 457:18–458:9, 459:4–16) and Mr. Meyer testified regarding how the Sequenom Agreements fit into his analysis and how he valued the Agreements. Tr. 579:2–19; 579:20–581:18; 582:4–583:17.

The jury considered the evidence offered by both parties. The Court must limit itself to determining whether the jury based its verdict on legally sufficient evidence that amounts to more than a scintilla. Mr. Meyer presented substantial evidence on which the jury was free to rely. Therefore, the Court declines to disregard the jury's damages award and denies Labcorp's JMOL on this ground.

## IV. **CONCLUSION**

For the reasons above, the Court finds that Ravgen produced sufficient evidence to support the jury's verdict in this case. The Court therefore **DENIES** Labcorp's Motion for Judgment as a Matter of Law.

**SIGNED** this 23rd day of January, 2025.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE